UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-24079-MORENO/TORRES

RIGI KOPF, LLC, a Florida limited liability
Company,

       Plaintiff,

v.

SKYBRIDGE MIAMI, LLC, a Delaware Limited
Liability Company, FELIPE MONROY TORRES,
individually, ARIEL ZEEV PICKER SCHATZ,
individually, BOBE HOLDINGS LIMITED
PARTNERSHIP, a Prince Edward Island (Canada)
Limited Partnership, and OLGA SCHATZ
SKVIRSKY, individually,

       Defendant.

_____/

**SKYBRIDGE'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL REGARDING PLAINTIFF RIGI KOPF, LLC'S DEFICIENT RESPONSE, INADEQUATE PRIVILEGE LOG AND MISSING PRODUCTION**

Defendant, Skybridge Miami, LLC ("Skybridge"), respectfully submits this Reply in Support of its Motion to Compel Regarding Plaintiff, RIGI KOPF, LLC's ("RIGI KOPF") Deficient Response, Inadequate Privilege Log and Missing Production.

RIGI KOPF's Response to Skybridge's Motion to Compel did nothing to remedy most of its production deficiencies. The Motion to Compel spot-lighted several inexplicable discovery issues including the fact that no documents had been produced by John Ruiz. Ruiz is the Co-Manager of RIGI KOPF (along with Ronald Vogel) and the sole Manager of JR KOPF (the 50% owner of RIGI KOPF). Despite its mantra that "no documents exist", it did partially re-think its "hide-the-ball" strategy and produce three documents involving Ruiz, all of which are highly

redacted but nonetheless demonstrate that documents do exist.[1] Two of the three documents were written by the Manager of KOPF Acquisitions, LLC, the operating company (the Company"), so Ruiz rightfully concluded that he would likely lose all credibility with the Court if he didn't at least produce those documents. But this belated production; seven months in the making and just over two weeks before the discovery cut-off proves Skybridge's point that nothing short of a Court order compelling production coupled with sanctions will correct Plaintiff's misconduct.

The Response serves to further exacerbate the need for an independent forensic inspection of its computer data and files because rather than addressing the deficiencies noted in Skybridge's Motion to Compel, the Response uses doublespeak to confuse and mislead the Court. The Privilege Log is also still lacking, and the additions to the log beg the Court for an in-camera inspection.[2]

### A. RIGI KOPF Has Not Complied with the Discovery Requests and the Response is Misleading at Best

RIGI KOPF has two distinct but contradictory arguments for why it ought not be compelled to produce. First, that it can't produce documents "that don't exist", and second, that even if the documents do exist, they are protected by the attorney-client privilege.

The response vacillates between these two conflicting statements. In one breath RIGI KOPF definitively states "these documents [meaning documents sent to, from, or cc'd to John Ruiz] *do not* exist" but in the next breath adds a caveat that these documents do not exist "outside of the attorney-client privilege." *See* Response at p. 2. Again, Plaintiff writes "these documents *do not* exist" (*id*.), but then covers its tracks and claims "Plaintiff stands by its discovery responses and asserts that there are no documents responsive to such requests *other than what was produced*

---

[1] *See* ECF No. 95-1 at RIGI 1st RFP Responses – 00826, 00836, and 00862.
[2] Beyond the egregious fact that the newly produced and redacted documents miraculously involve Ruiz when according to Plaintiff no documents involving Ruiz exist, the majority of the logged documents take place at the same time that the capital call was occurring in September and October of 2023. Therefore, Skybridge cannot identify whether the logged documents are truly legal or instead serve a business purpose.

2

*to the Defendant* [which originally included nothing from Ruiz], *and what is being produced within the Third Amended Privilege Log* [where three documents involving Ruiz were apparently located]. *See id*. at p. 5 (emphasis added). These statements cannot all be true. They are explicitly contradictory. The fact that documents may be protected by privilege doesn't mean they don't exist. Skybridge contends that the contradiction ought to be a flashpoint for the Court.

Its implausible that John Ruiz was neither sent nor received a single document regarding what we believe to be his $4 million investment in fifty percent of the Plaintiff entity[3] at any time prior to May 3, 2022[4] (the earliest date reflected on the privilege log at ECF No. 95-1) and that no additional nonprivileged documents were sent or received except for the three documents finally released after months of legal wrangling. Why so implausible?  Because the Company has only two members: Skybridge and Plaintiff. Plaintiff has two Managers and two Members:  Ronald Vogel and John Ruiz are the co-Managers and JR KOPF, LLC and Vogel are the two Members with Ruiz being the sole Manager of JR KOPF, LLC. Since its inception, the Company has been capitalized with $17,493,078.63 million of which at least $3,237,132.05 is money directly provided by Ruiz and his affiliates. During this same time important decisions were made regarding the development of the real estate for the Fixed Based Operation for which the Company was formed. That development required member votes on funding and further capitalization. These are precisely the type of high-level events and decision making that the principles – including Ruiz –by all reasonable measures, would have been intimately involved. And they were.

---

[3] Ruiz purchased his 50% share in August 2021.
[4] This document is redacted. However, this document reflects the need for the Court to conduct an in-camera review because it is redacted as attorney-client and/or work product privilege when it was written <u>a year and a half before the lawsuit was filed</u> and the unredacted bottom portion of the email is discussing the annual budget of KOPF—a business not legal objective. Ruiz was neither general counsel to RIGI KOPF nor engaged as independent legal counsel prior to the lawsuit being filed. At this point, Ruiz was solely the Co-Manager of Plaintiff and the unredacted portion of the email demonstrates that it was a business email.

It's beyond astonishing that Ruiz would have never communicated by email, phone, text, WhatsApp or any other "document" regarding the investment; either whether to make it or how to manage it with his co-manager, Vogel. To put even a finer point on it, on September 6, 2023, when the Company made a capital call of $9,400,000.00 (for which RIGI KOPF declined to participate and which provoked this very lawsuit), by its suggestion that no documents exist, Plaintiff suggests that Ruiz was never consulted in his capacity as a co-Manager of the Plaintiff or the Manager of one of its only two members.[5] Yet, they belatedly produced the correspondence to Ruiz from the Company's Manager noticing the Capital Call in response to the Motion to Compel. *See* ECF No. 95-1 at RIGI 1st RFP Responses – 00826, 00836. As such, its word that no documents exist cannot be taken at face value.

Another frequent argument of the Plaintiff deploys old fashioned word-smithing. Plaintiff's response suggests boundaries on Skybridge's requests that don't exist. Plaintiff writes that "there are *no documents* that are being retained in which correspondence was sent or received by Mr. Ruiz *in his role as Manager of RIGI KOPF*." *Id.* at p. 6. But no such limitation existed in the document request. The documents sought included every document sent or received by Ruiz in respect to the matters relevant to the case. *See* ECF No. 76-1 at RFP Nos 1, 2, 3, 7, 47, and 48. Skybridge never intended to exclude responsive documents that might have been sent or received in his personal capacity, in his capacity as Manager of JR KOPF, LLC, in his role as beneficial owner of RIGI KOPF. RIGI KOPF's or in any other capacity.

Perhaps suggestive of a trove of secreted documents, Plaintiff argues that "documents pertaining to Mr. Ruiz's involvement with "JR KOPF". . . [are] irrelevant to the instant motion, as

---

[5] Even communications regarding JR KOPF's acquisition of the fifty percent interest in RIGI KOPF are missing—and that clearly would have been responsive to Skybridge's Request for Production No. 3. *See* ECF No. 76-1 at RFP No. 3.

4

Defendant's first Request for Production never once requested documents and/or information relating to JR KOPF." *Id.* This is nothing more than a thinly veiled excuse for non-disclosure. Indeed, Plaintiff long ago responded to the document request and raised whatever objections to production it thought had merit. It doesn't get to deploy new objections to otherwise non-objected document requests by withholding documents based on objections never raised.[6]

But parsing its response, it's obvious that Plaintiff has adopted its position based upon two falsehoods: (a) that the attorney-client privilege is so broad as to protect from disclosure virtually every document sent to Ruiz; just because Ruiz happens to be a lawyer and (b) if a document is logged for privilege the "documents don't exist" for production purposes. Plaintiff cannot meet its burden to establish the former falsehood, and the latter falsehood might explain why the Plaintiff keeps amending (albeit inadequately) its privilege log.

### B. Plaintiff Has Not Met its Burden to Establish Privilege Over the Ruiz Documents

It is well established that "the party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential. *See* D*iamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184 (S.D. Fla. 2021). Federal Rule of Civil Procedure 26(b)(5) expressly requires a party asserting privilege to "describe the nature of the documents" not disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017).

A failure to meet that burden "causes the claim of privilege to fail." *Diamond Resorts U.S. Collection Dev., LLC*, P.A., 519 F. Supp. 3d at 1198. If party claiming privilege "present[s] some

---

[6] RIGI KOPF did not object to production based on relevance, so any belated deployment of the objection is waived. *See* ECF No. 76-4.

5

evidence to convince the court that privilege might apply," the trial court should conduct an in-camera inspection to determine whether the sought-after materials are truly protected by the attorney-client privilege. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 585 (S.D. Fla. 2013); *see also Diamond Resorts,* 519 F. Supp. 3d 1184 ("[T]he Court [may] conduct an in camera review of the allegedly privileged documents; in camera review, however, is not to be used as a substitute for a party's obligation to justify its withholding of documents."). Here, Plaintiff has failed to meet its burden so its claim of privilege must fail, and this Court should compel production of the logged documents. Should the Court have doubts as to whether privilege might apply to certain documents, the Court should conduct an in-camera review.

In the case here, where the lawyer wears two hats: business and legal, the burden is even higher. Courts generally agree that the privilege only applies to communications made solely for the purpose of obtaining legal advice. *In re Am.-CV Station Grp., Inc.,* 654 B.R. 516, 518 (Bankr. S.D. Fla. 2023). Therefore, even if the attorney is copied on or participating in an email chain, that does not make the communication privileged. *Id*. It must be established that the attorney was necessary to the communication in his or her capacity *as an attorney*. *Id*. In fact, even when advice given by an attorney relates to both business and legal advice, "the legal advice must predominate in order for the attorney-client privilege to apply." *Preferred Care Partners Holding Corp. v. Humana, Inc*., 258 F.R.D. 684, 689 (S.D. Fla. 2009) (citing *Carpenter v. Mohawk Indus., Inc*., 2007 WL 5971741, at * 9 (N.D. Ga. Oct. 1, 2007).

The burden of proof remains squarely on the party claiming the privilege to demonstrate that "the primary purpose of the communication in question was for the purpose of obtaining legal advice, not business advice." *Id*. "As the proponent of the privilege, [plaintiff] must show . . . that the communication was confidential and that the primary purpose of the communication was to

6

relay, request or transmit legal advice." *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018); *Humana, Inc.*, 258 F.R.D. at 689 ("[T]he protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance."); *Mohawk Indus., Inc.*, 2007 WL 5971741, at *9 ("When advice given by an attorney relates to both business and legal matters, the legal advice must predominate in order for the attorney-client privilege to apply."); *Hasty v. Lockheed Martin Corp.*, No. Civ. A. 98–1950, 1999 WL 600322, at *2 (E.D.La. Aug. 6, 1999) ("[T]he business aspects of [a corporate] decision are not protected simply because legal considerations are also involved;" and, "in those cases where the document does not contain sufficient information to indicate whether the material was considered confidential, that material should not be privileged."); *In re Vioxx*, 501 F.Supp.2d at 798–99 (E.D. La. 2007) ("[M]erely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery. The lawyer's role as a lawyer must be primary to her participation" in a communication for privilege to attach.); *United States v. Freeman*, 619 F.2d 1112, 1119–20 (5th Cir. 1980) ("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."). Ultimately, "neither the existence of an attorney-client relationship nor the mere exchange of information with an attorney make out a presumptive claim." *Meade,* 250 F. Supp. 3d at 1391. The primary purpose of the communication must be to seek legal advice. *Id.*

Here, Plaintiff has fallen far short of its burden to establish that the communications were primarily legal. Plaintiff has failed to thoroughly explain Ruiz' roles, when he would be acting in one role or the other, why the documents logged are privileged, how it can be sure that the objective behind the logged communications was to seek legal advice rather than to discuss a business purpose, and in circumstances where the communications entailed both legal and business advice

7

that the primary purpose was legal. Plaintiff fails to establish when Ruiz was wearing which hat so it cannot maintain its privilege over the logged documents. For example, Plaintiff logged a document from May of 2022. There is no set forth basis for privilege in a document created a year and a half before the lawsuit was filed where Ruiz was presumptively operating in his business role. *See* RIGI00874 at ECF No. 95-1. Moreover, the descriptions lack any real detail which would put Skybridge on notice of the subject of the withheld documents. For example, "email concerning legal agreement." This could mean anything, including something fully business oriented like loan terms for a potential loan for the company. Skybridge has no way to discern whether Ruiz was acting in his legal or business capacity here.

The same was true in *Meade*. There, the Court held "Defendant's revised privilege log is wholly inadequate to allow Plaintiff or the Court to evaluate the validity of the assertions. The log contains no explanatory information about the actual contents of the documents. Rather, Defendant uses boilerplate assertions regarding the subject matter of the documents." *Meade,* 250 F. Supp. 3d at 1395. The lack of transparency in the log ultimately caused the court to perform an in-camera review, wherein the court held that "Defendant has improperly asserted the attorney-client privilege over several documents that contain purely factual information merely because in-house counsel is included in the email chain." Skybridge anticipates that the same will hold true here.

Plaintiff tries to distinguish *In re Am.-CV Station Grp., Inc.,* 654 B.R. at 518, a case that is fully on point, by claiming that Skybridge has not deposed Ruiz so "Defendants cannot possibly articulate whether Mr. Ruiz was involved in any business decision-making for the Plaintiff." *See* Response at p. 6. However, Ruiz need not be the decision maker to have responsive documents. In this unique situation where an attorney serves as counsel and a material witness (by way of his role as Co-Manager of RIGI KOPF, the minority entity in KOPF, and as Manager of JR KOPF,

the 50% owner of RIGI KOPF), the attorney client privilege only applies to documents seeking or providing legal advice. Until the lawsuit was filed, Ruiz was not acting in his legal capacity—and even after the filing of the lawsuit, he is only acting in his legal capacity when he is discussing case strategy. He was not general counsel of RIGI KOPF—rather he is a Co-Manager. Accordingly, any document discussing his initial investment, the capital call, the bank loans, KOPF's business, RIGI KOPF's share of the business, or any day to day business issue that arose is not privileged. Only documents explicitly sent or received to "secure legal advice or assistance" would be privileged.

### C. Privileged Documents Not Logged Should be Waived and Lose Status as Privileged

On July 23, 2024, RIGI KOPF served its Second Amended Privilege Log, but only after numerous meet and confers. It's too little too late. And in a strategy that has now become routine, Plaintiff simultaneously alleges that there was nothing wrong with its existing privilege log while nevertheless issuing a new log. This time, a third amended privilege log, filed on August 28, 2024 [ECF No. 95-1].

In response to the Motion to Compel, RIGI KOPF added 10 new entries to their privilege log (its third go around after months of meeting and conferring). Everything beginning on page 11 of their privilege log is new. Because those documents were not previously logged, were not disclosed for seven months and only on the eve of the discovery cut off and were only logged in response to the Motion to Compel, RIGI KOPF has waived privilege and those documents should be produced in full and without redaction. *See Bautech USA, Inc. v. Resolve Equip., Inc.*, No. 23-CV-60703, 2024 WL 1929486, at *2 (S.D. Fla. May 2, 2024) ("given the extended delay in PNI producing its required privilege log, I find that deeming a waiver of privilege over those documents listed on the log that were created prior to commencement of this action on April 13, 2023, is

9

appropriate."); *Meade*, 250 F. Supp. 3d at 1393 ("the court may impose as a sanction the waiver of privilege for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests by improperly withholding documents on the basis of privilege, and failing to provide an adequate privilege log in compliance with Rule 26.")

Here, RIGI KOPF uses the same double speak that it used to avoid the production of documents involving Ruiz. It asserts "the privilege log at issue concerns matters requested in the Defendant's First Request for Production and, thereby, no waiver should be applied to additional privileged documents that may exist, which the Defendant *did not* request in the First Request for Production." Response at p. 14. This argument is non-sense. If any additional privileged documents exist, then Plaintiff's right to claim privileged has been waived as those documents are not logged. The first production request of 49 requests covered every subject matter relevant to the case. The Plaintiff's response is to engage in a repetitive game of hide-and-seek. As such, any privileged documents that come to light that are not logged, dealing with any of the 49 topics should be waived.

## CONCLUSION

For all the foregoing reasons, Skybridge's Motion to Compel should be granted and RIGI KOPF should also be ordered to pay for the reasonable costs associated with the filing of this motion.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: */s/ Michael N. Kreitzer*
**MICHAEL N. KREITZER**
Florida Bar No. 705561
kreitzerm@gtlaw.com
moisem@gtlaw.com
flservice@gtlaw.com
**JENNIFER JUNGER**
Florida Bar No. 125853
jungerj@gtlaw.com
fernandezfe@gtlaw.com
**PHILLIP M. SOVEN**
Florida Bar No. 1035504
phil.soven@gtlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of September 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Michael N. Kreitzer*
MICHAEL N. KREITZER

## SERVICE LIST

John H. Ruiz, Esq.
Christine M. Lugo, Esq.
**MSP RECOVERY LAW FIRM**
2701 S. LeJeune Rd., 10th Floor
Miami, FL 33134
Telephone: (305) 614-2222
jruiz@msprecoverylawfirm.com
clugo@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

*Counsel for Plaintiff*